# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**DANIEL JON PETERKA,**
**D.O.C. # 119773,**

     **Plaintiff,**

**VS.**                          **Case No. 4:21cv367-WS-MAF**

**RICKY D. DIXON, in his official**
**capacity as Secretary of the**
**Florida Department of Corrections,**
**and JPAY, LLC,**

     **Defendants.**
_____/

## REPORT AND RECOMMENDATION

The pro se Plaintiff initiated this case on September 7, 2021, ECF No. 1, by filing a civil rights complaint against the Secretary of the Department of Corrections and JPay, LLC, a contractor providing services to Florida prisoners.  ECF No. 1.  Plaintiff subsequently paid the filing fee, ECF Nos. 6-7, and service was directed.  ECF No. 13.  After initially filing a motion to dismiss, ECF No. 26, and a motion to compel arbitration, ECF No. 27, Plaintiff was granted leave to file an amended complaint.  ECF Nos. 40, 42.

Plaintiff's amended complaint was filed on September 28, 2022, pursuant to 42 U.S.C. § 1983.  ECF No. 46.  The amended complaint alleges that the DOC is violating his First and Fourteenth Amendment rights, ECF No. 46 at 6, and his rights under the Fifth Amendment, ECF No. 46 at 10, and Fourteenth Amendment, *Id.* at 12.  Plaintiff asserts Fifth and Fourteen Amendment claims against JPay as well.  *Id.* at 10, 12.

The Secretary, sued in his official capacity only, filed a motion to dismiss Plaintiff's amended complaint.  ECF No. 52.  JPay has also filed a separate motion to dismiss.  ECF No. 54.  Plaintiff was directed to file responses in opposition to those motions.  ECF No. 55.  Plaintiff has done so, ECF Nos. 56-57, and the motions are ready for a ruling.

**Allegations of the Amended Complaint**

Defendant JPay provides "multimedia kiosks and tablets to all prisoners housed in" the Department of Corrections.  ECF No. 46 at 5.  Through the kiosks and tablets, prisoners have access to an electronic messaging system, identified as "Secure Mail."  *Id.* at 6.  Prison officials are authorized under Rule 33-602.900(7) to screen eCommunications and intercept any eCommunication "that violates state law, federal law, or Department rule," without explanation.  *Id.* at 7-8.  Plaintiff alleges that he

has had "multiple eCommunications censored without explanation by unidentified Department staff." *Id.* at 8. Further, Plaintiff contends that the Department's Rule "did not create an accompanying procedure for either prisoners or their correspondents to appeal those rejections." *Id.* Plaintiff asserts in Count I that the Department (Defendant Dixon) has violated his procedural due process rights, secured by the First and Fourteenth Amendments. ECF No. 46 at 6-9.

He further contends that Defendant JPay contracted to "provide black & white printing of Secure Mail messages for all inmates in Special Housing (not including attachments) at no cost to the inmate or the Department." *Id.* at 10-11. Plaintiff is housed on death row and is in a "Special Housing Unit." *Id.* at 11. However, Plaintiff alleges that Defendant JPay charged him numerous times for black & white printouts of his Secure Mail messages totaling almost $350 dollars. *Id.* Plaintiff asserts in Count II that Defendants JPay and the Department of Corrections have violated his rights "secured to him by the Takings Clause of the Fifth Amendment." *Id.* at 10-12.

Plaintiff brings a third claim against both the Department and JPay. ECF No. 46 at 12-14. He contends that the taking of his money "amounts

to deliberate indifference, shocks the conscience, and "amounts to outright theft."  *Id.* at 13.  Plaintiff alleges that his Fourteenth Amendment substantive due process rights were violated by the actions of both Defendants who "teamed up" to make the use of the electronic message services the "sole means" for prisoners to receive incoming routine mail. ECF No. 46 at 13.  He contends that he "has a constitutionally protected and fundamental right to property in the money" that the Department authorizes him to possess in his inmate media account.  *Id.*

Defendant JPay is "sued for declaratory and injunctive relief as well as nominal and compensatory damages."  *Id.* at 5.  Defendant Dixon is "sued in his official capacity for declaratory and injunctive relief as well as nominal and compensatory damages."  ECF No. 46 at 5.

**Defendant Dixon's Motion to Dismiss**

Defendant Dixon first argues that Plaintiff failed to exhaust administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).  ECF No. 52 at 5-21.  In particular, Defendant argues that Plaintiff did not file a Petition to Initiate Rulemaking (a "PIRM"), which is an available administrative remedy.  *Id.* at 10-21.  Second, Defendant argues that Plaintiff's amended complaint fails to state a claim under the

Takings Clause. *Id.* at 21-25. Defendant also argues that this Court lacks subject matter jurisdiction over Plaintiff's Fifth Amendment claim. *Id.* at 25-27. Additionally, Defendant asserts that Plaintiff is not entitled to declaratory or injunctive relief. *Id.* at 27-29. Moreover, it is argued that Plaintiff's substantive due process claim is insufficient to state a claim. *Id.* at 29-30. Finally, Defendant asserts his entitlement to Eleventh Amendment immunity and Qualified immunity. ECF No. 52 at 30-33.

**Defendant JPay's Motion to Dismiss**

Defendant JPay contends that Plaintiff's claims against it fail because JPay is not a "state actor." ECF No. 54. Even if Defendant JPay were deemed to be acting under color of state law, Defendant argues that the Fifth Amendment takings claim fails and must be dismissed. *Id.* Third, Defendant argues that Plaintiff's due process claim fails because Plaintiff's interest in his money is not protected by substantive due process. *Id.*

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the plaintiff has alleged enough plausible facts to support the claim stated. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127

S.Ct. 1955, 167 L. Ed. 2d 929 (2007). "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S.

662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Twombly,

550 U.S. at 570, 127 S. Ct. 1955).[1] "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Iqbal,

556 U.S. at 678, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127

S. Ct. at 1965); see also Wilborn v. Jones, 761 F. App'x 908, 910 (11th Cir.

2019). "The plausibility standard" is not the same as a "probability

requirement," and "asks for more than a sheer possibility that a defendant

has acted unlawfully." Iqbal, 556 U.S. at 677 (quoting Twombly, 550 U.S.

at 556). A complaint that "pleads facts that are 'merely consistent with' a

defendant's liability," falls "short of the line between possibility and

plausibility." Iqbal, 129 556 U.S. at 677 (quoting Twombly, 550 U.S. at

557).

---

[1] The complaint's allegations must be accepted as true when ruling on a motion to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), cert. denied, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations." Twombly, 127 S. Ct. at 1965, (quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)).

The pleading standard is not heightened, but flexible, in line with Rule

8's command to simply give fair notice to the defendant of the plaintiff's

claim and the grounds upon which it rests.  <u>Swierkiewicz v. Sorema</u>, 534

U.S. 506, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002) ("Rule 8(a)'s

simplified pleading standard applies to all civil actions, with limited

exceptions.").  Pro se complaints are held to less stringent standards than

those drafted by an attorney.  <u>Wright v. Newsome</u>, 795 F.2d 964, 967 (11th

Cir. 1986) (citing <u>Haines v. Kerner</u>, 404 U.S. 519, 520-521, 92 S. Ct. 594,

596, 30 L. Ed. 2d 652 (1972)).  Nevertheless, a complaint must provide

sufficient notice of the claim and the grounds upon which it rests so that a

"largely groundless claim" does not proceed through discovery and "take

up the time of a number of other people . . . ."  <u>Dura Pharmaceuticals, Inc.</u>

<u>v. Broudo</u>, 544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005)

(quoted in <u>Twombly</u>, 550 U.S. at 558).

**Analysis**

**1.    Exhaustion of Administrative Remedies**

Defendant Dixon asserts that "Plaintiff is required to exhaust *all*

available administrative remedies prior to filing suit pursuant to the

requirements of the PLRA . . . ."  ECF No. 52 at 8.  Because Plaintiff did not

file a Petition to Initiate Rulemaking pursuant to § 120.54(7), Fla. Stat.,

Defendant argues that Plaintiff did not exhaust his administrative remedies.

*Id.* at 9-10.

Defendant explains that the Florida Administrative Procedure Act,

codified in Chapter 120 of the Florida Statutes, "governs judicial review of

agency decisions" and "presumes that the procedures it makes available

are necessary to exhaust administrative remedies . . . ."  ECF No. 52 at 10.

Defendant asserts that § 120.54(7) "is an available administrative remedy

which allows a prison inmate to file a Petition to Initiate Rulemaking

('PIRM')."  *Id.*  Because prisoners are "specifically authorized to file" such

petitions, Defendant argues that Plaintiff must have done so to properly

exhaust administrative remedies.  *Id.* at 10-12.  Defendant notes, however,

that submitting a PIRM "is a separate process from the normal grievance

process created by FDOC . . . ."  *Id.* at 11.  Yet Defendant contends that

the "normal prisoner grievance process alone . . . is insufficient to properly

notice FDOC about an administrative regulation."  *Id.* at 12.

In enacting the Prison Litigation Reform Act (PLRA), Congress

mandated that "[n]o action shall be brought with respect to prison

conditions under section 1983 of this title . . . by a prisoner confined in any

jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement is mandatory, <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1324-26 (11th Cir. 1998), and "applies to all inmate suits about prison life."  <u>Porter v. Nussle</u>, 534 U.S. 516, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002).  A prisoner must comply with the process set forth and established by the grievance procedures, <u>Miller v. Tanner</u>, 196 F.3d 1190, 1193 (11th Cir. 1999), and he must do so "properly."  <u>Woodford v. Ngo</u>, 548 U.S. 81, 93, 126 S. Ct. 2378, 2387 (2006) (concluding that "proper exhaustion" means complying with the specific prison grievance requirements, not judicially imposed requirements).

Courts do not consider the adequacy or futility of administrative remedies, but only the availability of such.  <u>Higginbottom v. Carter</u>, 223 F.3d 1259, 1261 (11th Cir. 2000) (citing <u>Alexander</u>, 159 F.3d at 1323).  Further, an inmate must exhaust administrative remedies "regardless of the relief offered through administrative procedures."  <u>Booth v. Churner</u>, 532 U.S. 731, 741, 121 S. Ct. 1819, 1825, 149 L. Ed. 2d 958 (2001).  "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled

into court."  Jones v. Bock, 549 U.S. 199, 204-209, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007).  However, a "prisoner need not exhaust remedies if they are not 'available.'"  Ross v. Blake, 578 U.S. 632, 636, 136 S. Ct. 1850, 1855, 195 L. Ed. 2d 117 (2016).

In Ross v. Blake, after a prisoner sued a prison guard, the guard argued that the prisoner had not exhausted administrative remedies.  548 U.S. at 637, 136 S. Ct. at 1855.  The district court dismissed the case, finding that an internal investigation did not relieve prisoners from the exhaustion requirement.  Id. at 637, 136 S. Ct. at 1855.  The Fourth Circuit reversed, and the Supreme Court rejected the Fourth Circuit's adoption of a "'special circumstances' exception" to the PLRA's "rule of exhaustion." Id. at  641, 136 S. Ct. at 1858.  The Court reiterated that a prisoner "must exhaust available remedies, but need not exhaust unavailable ones."  Id. at 642, 136 S. Ct. at 1858.

The Court explained three circumstances to show when a remedy is unavailable, including a dead-end process, a process thwarted by prison officials, and one which is "so opaque that it becomes, practically speaking, incapable of use."  Id. at 643-44, 136 S. Ct. at 1859-60.  For example, if rules are "so confusing" that a reasonable prisoner cannot use them, they

are not available.  *Id.* at 644, 136 S. Ct. at 1859.  Further, if a procedure is "essentially 'unknowable'—so that no ordinary prisoner can make sense of what it demands—then it is also unavailable."  Ross, 578 U.S. at 644, 136 S. Ct. at 1859 (citing to Goebert v. Lee Cnty., 510 F.3d 1312, 1323 (11th Cir. 2007); Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008)).  The Court in Ross found it unclear whether filing a grievance under Maryland's administrative remedy procedure (ARP) was available if an internal investigation (IIU) was underway.  In practice, Maryland's procedure was confusing, inconsistent, and "perplexing," leaving the Court to question why the Inmate Handbook did not spell out to prisoners how to navigate the process.  Ross, 578 U.S. at 647-48, 136 S. Ct. at 1861.  The Court remanded the case for further consideration.  *Id.* at 649, 136 S. Ct. at 1862.

The Inmate Handbook was an important consideration for the Court in determining what an inmate must do to exhaust administrative remedies. In Florida, inmates are provided an Inmate Orientation Handbook which guides them in the "rules, procedures, requirements and routines" of prison life.  Jean-Denis v. Inch, No. 3:19cv575-RV-MAF, 2020 WL 3001933, at *3 (N.D. Fla. May 11, 2020), report and recommendation adopted, No. 3:19cv575-RV-MAF, 2020 WL 3001392 (N.D. Fla. June 4, 2020).  The

handbook directs inmates to the Department's "grievance process" and

Rule 33-103, Florida Administrative Code.  <u>Jean-Denis</u>, 2020 WL 3001933,

at *3.  Neither the Handbook nor Rule 33-103 directs inmates to file a

petition to initiate rulemaking (PIRM) under Chapter 120, Florida Statutes.

Pursuant to the Department's rules and procedures governing inmate

grievances, inmates may file complaints regarding "[t]he substance,

interpretation, and application of rules and procedures of the department

that affect them personally."  FLA. ADMIN. CODE R. 33-103.001(4)(a).  Thus,

the Department has provided an avenue for inmates to challenge or

otherwise complain about departmental rules and Chapter 33-103 outlines

that process.  In light thereof, there is no need for an inmate to file a PIRM.

Logically, if a prisoner believes the application of a Departmental Rule is

unconstitutional, he may challenge the Rule through the grievance

procedures outlined in Rule 33-103.  Defendant's argument that the

"prisoner grievance process . . . is insufficient to properly notice FDOC

about an administrative regulation," should be rejected.  *See* ECF No. 52

at 12.

Chapter 33-103 requires an inmate to file an informal grievance,

formal grievance, and then an appeal to the Office of the Secretary.  FLA.

ADMIN. CODE R. 33-103.007(1).  In limited circumstances not relevant here,

an inmate may also file a "direct" grievance to the Secretary.  FLA. ADMIN.

CODE R. 103.1007(6).  The Department's procedures specify the manner in

which grievances must be filed, provide time limits for filing and time limits

for prison officials to respond.  *See* FLA. ADMIN. CODE R. 33-103.011.  The

Department's grievance procedures indicate that after the time limit expires

for a response at the central office level of review, and the inmate does not

agree to an extension of time, "he shall be entitled to proceed with judicial

remedies as he would have exhausted his administrative remedies."  FLA.

ADMIN. CODE R. 33-103.011(4).  That suggests that after moving through

the three grievance steps, nothing further is required from the inmate

before initiating a lawsuit.

There is no Rule within Chapter 33-103 which informs a prison

inmate that he must also file a PIRM.  Any such implied requirement is

"unknowable": and "so opaque that it becomes, practically speaking,

incapable of use."  Ross, 548 U.S. at 643-44, 136 S. Ct. at 1859-60.  Filing

a PIRM is not a step that the Department holds out to inmates as a

requirement in the grievance process.

Nevertheless, Defendant argues that if "Congress had wanted to limit the exhaustion requirements of Section 1997e(a) to prison grievance procedures, it would have expressly said so."  ECF No. 52 at 13. Defendant points out that the first provision of the statute says that no action shall be brought "until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The statute then provides that "[t]he failure of a State to adopt or adhere to an administrative grievance procedure shall not constitute the basis for an action under section 1997a or 1997c of this title."  42 U.S.C. § 1997e(b).  Defendant makes much of the use of two different phrases - "administrative remedies" and "administrative grievance procedure" - and states that the "Court should presume that" Congress intended different meanings.  ECF No. 52 at 13. Defendant argues that Section 120.54(7) is an available administrative remedy that is available to Plaintiff and must be exhausted.

That argument is unavailing.  The second provision of § 1997e concerning the failure of a State to provide a grievance procedure does not alter the conclusion that exhaustion of administrative remedies is required - whatever those remedies are - whether through a grievance process or something else.  For a prisoner to exhaust administrative remedies, that

Case No. 4:21cv367-WS-MAF

process must be known.  In Florida, the grievance procedures are known to Florida inmates because the Handbook directs their attention to Rule 33-103; Rule 33-103 does not direct an inmate to file a Petition to itiate Rulemaking under Chapter 120, Florida Statutes.

"[W]hen a state provides a grievance procedure for its prisoners ... an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit."  Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000). The guiding practice of the Supreme Court has been to look to the particular policies and procedures of a state prison's grievance process. *See, e.g.,* Jones, 549 U.S. at 206, 127 S. Ct. at 916 (reviewing the relevant grievance procedures set forth in the Michigan Department of Corrections' (MDOC) "Policy Directive").  The rule that has emerged is this - "to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' 548 U.S., at 88, 126 S.Ct. 2378 - rules that are defined not by the PLRA, but by the prison grievance process itself."  Jones, 549 U.S. at 218, 127 S. Ct. at 922 (quoting Woodford, 548 U.S. at 88, 126 S. Ct. 2378). "Compliance with prison grievance procedures, therefore, is all that is

required by the PLRA to 'properly exhaust.'" <u>Jones</u>, 549 U.S. at 218, 127

S. Ct. at 922-23.  Florida's prison grievance process does not require a

prisoner to submit a PIRM.  If the Department of Corrections believes that

filing a PIRM is necessary for a prisoner to exhaust administrative

remedies, the Department's grievance procedures should say so.  They do

not.  Thus, Defendant's argument that this case should be dismissed for

failure to exhaust "available" administrative remedies as required by 42

U.S.C. § 1997e(a), ECF No. 52, should be rejected.

## 2.    Taking Clause violation

Defendant JPay argues that Plaintiff's Fifth Amendment "Takings

Clause" violation is insufficient and should be dismissed.  ECF No. 54 at

19-20.  JPay points out that Plaintiff's complaint does not allege that his

property was taken "for public use."  *Id.* at 20.  "As a result, Mr. Peterka has

not alleged a viable takings claim."  *Id.*

Defendant JPay contends that there "can be no claim under the

Takings Clause unless private property is seized for public use; therefore,

when a public use is not alleged," a Takings Clause claim should be

dismissed.  ECF No. 54 at 19.  In response, Plaintiff states that his

complaint alleged that money was taken from his account by JPay

pursuant to its contract with the Department of Corrections, and that the Department and Jpay share the profits.  ECF No. 57 at 3.  Thus, Plaintiff contends that the money is taken "at least in part 'for public use.'"  *Id.*

"The Takings Clause of the Fifth Amendment states that "private property [shall not] be taken for public use, without just compensation." <u>Knick v. Twp. of Scott, Pennsylvania</u>, 204 L. Ed. 2d 558, 139 S. Ct. 2162, 2167 (2019); *see also* <u>Brown v. Legal Found. of Washington</u>, 538 U.S. 216, 231–32, 123 S. Ct. 1406, 1417, 155 L. Ed. 2d 376 (2003) (noting that a State has "authority to confiscate private property" but "the Fifth Amendment imposes two conditions on the exercise of such authority: the taking must be for a 'public use' and 'just compensation' must be paid to the owner").  It does not matter whether the property taken is "real or personal," people do not expect their property to be taken away.  <u>Cedar Point Nursery v. Hassid</u>, 210 L. Ed. 2d 369, 141 S. Ct. 2063, 2074 (2021) (citing to <u>Horne v. Dep't of Agric.</u>, 576 U.S. 350, 361, 135 S. Ct. 2419, 2427, 192 L. Ed. 2d 388 (2015)).

Although a Fifth Amendment "Takings Clause" claim applies to federal officials, and Plaintiff has only named state actors, the "Clause is made applicable to the States through the Fourteenth Amendment."

Chicago, B. & Q.R. Co. v. Chicago, 166 U.S. 226, 17 S. Ct. 581, 41 L. Ed. 979 (1897) (cited in Murr v. Wisconsin, 198 L. Ed. 2d 497, 137 S. Ct. 1933, 1942 (2017)).  Thus, Plaintiff's claim is reviewed as though properly alleged under the Fourteenth Amendment.

As noted by Defendant JPay, the "Takings Clause does not require compensation unless private property has been taken 'for public use.'" U.S. CONST. AMEND. V. (cited in Support Working Animals, Inc. v. DeSantis, 457 F. Supp. 3d 1193, 1215 (N.D. Fla. 2020)).  Plaintiff's complaint alleged that he should not be charged to receive "black & white printing" of his secure mail messages because he is housed in Special Housing, but that $345.25 was wrongfully taken from his account.  ECF No. 46 at 10-11.  The complaint alleged a wrongful "taking," but no allegations were made of a taking for public use.  Plaintiff alleged that "the FDOC and . . . JPay, rake in millions of dollars in profit every year from the sales of goods and services to prisoners through the program's 'Media Store.'"  ECF No. 46 at 6.  The assertion of a shared "profit" is not necessarily sufficient to show a taking for "public use" because no explanation is provided as to what happens to the profit or how it is used or distributed.

There is also another reason that Plaintiff's Takings Clause claim is insufficient and should be dismissed.  The Court takes judicial notice that when Plaintiff initiated this case, he submitted copies of relevant grievances to show that his claims were exhausted.  ECF No. 1-1 (Appendix 1).  Review of those grievances provides clarification of Plaintiff's "takings" claim and demonstrates that Plaintiff did not suffer a "taking" without compensation.

Plaintiff's grievances reveal that he sought a refund of charges for printouts of email messages.  *See* ECF No. 1-1 at 13-22.  The responses to Plaintiff's grievances reveal that Plaintiff claimed he was charged for printouts, but he argued that as a "death row/special housing" inmate, he was not supposed to be charged for those copies.  *Id.* at 14-15.  The responses to his grievances explain that printouts are given "free" to special housing inmates when the inmate cannot access his emails.  *Id.* at 14.  However, if the inmate has access to a tablet and kiosk where he can review his emails, he will be charged for printouts.  *Id.* at 14, 18.  That is reasonable.  Plaintiff possessed a tablet and also had "regular access to a kiosk."  *Id.* at 18.  Thus, Plaintiff was charged for obtaining a "paper copy." *Id.*  Seen in that light, Plaintiff's takings claim must fail.  He did not have a

taking without just compensation.  Money was taken from his account, but Plaintiff was provided paper copies.  It was an exchange; he was given something in exchange for his money and, thus, he suffered no pecuniary loss.  Furthermore, it was Plaintiff's action that resulted in funds being taken from his account and not a unilateral decision by the government to take private property for a public use; Plaintiff was simply charged for printouts he requested.  Even if property is "taken, the Fifth Amendment only protects against a taking without just compensation." Brown, 538 U.S. at 240, 123 S. Ct. at 1421 (reviewing requirement that certain client funds be deposited in IOLTA accounts and explaining there is no violation of the Fifth Amendment when an owner's pecuniary loss is zero). The Court said that "pecuniary compensation must be measured by [one's] net losses rather than the value of the public's gain."  538 U.S. at 237, 123 S. Ct. at 1419–20.  Even if there was a profit, Plaintiff suffered no loss because he received something of value.  The "Takings Clause" claim should be dismissed as to Defendant JPay.

Defendant Dixon also addressed the "Takings Clause" claim.  ECF No. 52 at 21.  Defendant contends that the Department is not the proper party to address that claim because, under the Rule 33-602.900(10)(b)

JPay must address the accounting dispute. *Id.* at 22-23. Further, Defendant Dixon argues that the contract concerning JPay's provision of services includes an indemnification clause. *Id.* at 24. Thus, Defendant Dixon claims that JPay must indemnify the Department. *Id.* at 24-25. Plaintiff challenges Defendant Dixon's arguments as to this claim. ECF No. 56 at 4-6. His response also advises that the "improper charges are still being imposed and now exceed $500.00, a part of which is shared with the FDOC, and in that way converted at least in part 'for public use.'" ECF No. 56 at 6. Notwithstanding Defendant Dixon's arguments, it remains that for the same reasons the claim is insufficient as to JPay, it is also insufficient as to Defendant Dixon. Both motions to dismiss should be granted as to Claim II.

One additional comment is warranted. Defendant Dixon also argued that this Court lacks subject matter jurisdiction over the Takings Clause claim. ECF No. 52 at 25. Because the Court must ensure that jurisdiction exists, this assertion has been reviewed.

Defendant Dixon argued that Plaintiff "improperly invoked the Court's federal-question jurisdiction under § 1331." *Id.* at 26-27. Defendant insinuates that Plaintiff's "allegations amount to nothing more than a simple

state law claim" and is insufficient.  *Id.* at 27.  However, Plaintiff presented

his takings claim as a Fifth Amendment claim.  Plaintiff is a pro se prisoner

and his complaint must be liberally construed.  The Court construes this

Fifth Amendment "Takings Clause" claim as brought pursuant to the

Fourteenth Amendment."  Murr, 198 L. Ed. 2d 497, 137 S. Ct. at 1942.  The

Supreme Court's opinion in Knick v. Twp. of Scott makes clear that a

"property owner may bring a takings claim under § 1983 upon the taking of

his property without just compensation by a local government."  Knick, 204

L. Ed. 2d 558, 139 S. Ct. at 2179.  Plaintiff brought this action pursuant to

42 U.S.C. § 1983, *see* ECF No. 46 at 2, and his takings claim was properly

presented.  This Court has subject matter jurisdiction over such a claim

through 28 U.S.C. § 1331, and Defendant's argument that this Court lacks

jurisdiction over a constitutional "Takings Clause" claim should be rejected.

**3.    Substantive Due Process Claim**

Count III of Plaintiff's complaint was brought against both the

Department of Corrections and JPay.  ECF No. 46 at 12.  Defendant JPay

argues that this claim is not cognizable because it is predicated on a

property interest in his money and not on a fundamental right.  ECF No. 54

at 21.  Additionally, it is argued that the "Takings Clause" is the more

explicit source of protection for Plaintiff's claim rather than a substantive

due process claim.  *Id.* at 22-23.  Thus, Defendant seeks dismissal of this

claim.  *Id.*  In response, Plaintiff "concedes that he cannot maintain Cause

of Action 3 against JPay because it is not an executive branch official."

ECF No. 57 at 4.  Accordingly, Defendant JPay's motion to dismiss Count

III should be dismissed.

    In light of this recommendation to dismiss both claims asserted

against Defendant JPay, there is no need to address the argument that

JPay is not a state actor and, thus, is not an appropriate Defendant to be

sued under § 1983.  In doing so, it has not gone unnoticed that Plaintiff has

requested leave of Court to conduct discovery and produce "an

authenticated copy of the contract . . . that is central" to Plaintiff's claims.

ECF No. 57 at 4.  However, the Court has reviewed the record and notes

that a copy of an inmate's contract with JPay was already submitted in this

case.  Defendant JPay provided a copy of the contract on March 7, 2022,

in support of its prior motion to compel arbitration.  ECF No. 27-1.[2]  Plaintiff

did not initially receive it, but counsel subsequently advised that it was

---

[2] The document demonstrates it is an agreement between JPay and persons who use the JPay kiosk and/or JPay tablet.  ECF No. 27-1 at 4.

provided to Plaintiff on March 28, 2022.  ECF No. 34.  Thus Plaintiff had

that document available for review.

Moreover, any claim to continue as to this issue would necessarily be

a contract dispute.  Where a party's rights were "voluntarily created by

contract" with a government, "interference with such contractual rights

generally gives rise to a breach claim not a taking claim."  Baggett Transp.

Co. v. United States, 969 F.2d 1028, 1034 (Fed. Cir. 1992) (quoted in

Keane v. Jacksonville Police Fire & Pension Fund Bd. of Trustees, 775 F.

App'x 496, 499 (11th Cir. 2019)).  Requesting copies and being charged for

them is not a "takings" claim, although Plaintiff may have a dispute that the

language of the contract was unclear or vague.  Indeed, Plaintiff's

complaint alleged that "[u]nder the clear and unambiguous language of the

contract . . . he is exempt from being charged for black & white printouts of

his Secure Mail messages."  ECF No. 46 at 11.  "A 'breach of contract is

neither a confiscation of property nor a taking of property without due

process of law.'"  Shawnee Sewerage & Drainage Co. v. Stearns, 220 U.S.

462, 471 (1911) (quoted in Rivadeneira v. Univ. of S. Fla., No.

8:21-CV-1925-CEH-AAS, 2022 WL 445661, at *6 (M.D. Fla. Feb. 14,

2022)).  There is no need to provide Plaintiff additional time and discovery

Case No. 4:21cv367-WS-MAF

to support a "takings claim" because no other federal claim remains as to

Defendant Jpay; if there is a plausible claim, it is a state law claim only.

Accordingly, if Plaintiff desires to continue his challenge to being charged

for copies, he should do so in state court.

**4.    Declaratory and Injunctive Relief**

Defendant Dixon also argues that Plaintiff is not entitled to

declaratory relief on Count II, *see* ECF No. 52 at 27, or injunctive relief on

Count II.  *Id.* at 28.  Those arguments need not be addressed because it

has been recommended that the takings claim be dismissed for failure to

state a claim.

**5.    Substantive Due Process Violation**

Defendant argues that Count III of Plaintiff's complaint is the same as

the takings claim presented in Count II.  If a more specific constitutional

provision covers the claim, then the claim should be "analyzed under the

standard appropriate to that specific provision, not under the rubric of

substantive due process."  United States v. Lanier, 520 U.S. 259, 272, n.7

(1997) (quoted in ECF No. 52 at 29).  Defendant also argues that to

demonstrate a due process claim, an inmate "must demonstrate an

'atypical and significant hardship on the inmate in relation to the ordinary

Case No. 4:21cv367-WS-MAF

incidents of prison life' which would allow for recognition of a liberty

interest." Sandin v. Connor, 515 U.S. 472, 483-84 (1995) (quoted in ECF

No. 52 at 29). Defendant Dixon asserts that Plaintiff has not demonstrated

an atypical or significant hardship and Count III should be dismissed. *Id.*

In response, Plaintiff contends that he can bring as many separate

claims as he has under Rule 8(d). ECF No. 56 at 8. Further, he asserts

that a substantive due process claim may be brought if it "shocks the

conscience," and that, he contends, is his argument. *Id.* at 8-10.

"A violation of substantive due process occurs when an individual's

fundamental rights are infringed, regardless of the fairness of the

procedure." Waldman v. Conway, 871 F.3d 1283, 1292 (11th Cir. 2017)

(citing McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc)).

The taking of Plaintiff's money for copies is not a fundamental right.

> Where a fundamental liberty interest does not exist, substantive
> due process nonetheless protects against the arbitrary and
> oppressive exercise of government power. *See Cnty. of
> Sacramento v. Lewis*, 523 U.S. 833, 845–46, 118 S.Ct. 1708,
> 1716, 140 L.Ed.2d 1043 (1998). Executive action is arbitrary in
> a constitutional sense when it "shocks the conscience." *Id.* at
> 846, 118 S.Ct. at 1717. Only the most egregious conduct is
> sufficiently arbitrary to constitute a substantive due process
> violation. *Tinker v. Beasley*, 429 F.3d 1324, 1328 (11th Cir.
> 2005) (per curiam).

Waldman v. Conway, 871 F.3d 1283, 1292 (11th Cir. 2017).  Plaintiff's

claim does not demonstrate arbitrary or egregious conduct.  Moreover,

Plaintiff has not demonstrated an action which "shocks the conscience."

The Eleventh Circuit has affirmed the dismissal of substantive due

process claims where the deprivation of property could "not be

'characterized as arbitrary, or conscience shocking, in a constitutional

sense.'"  Morefield v. Smith, 404 F. App'x 443, 445 (11th Cir. 2010)

(quoting Collins v. City of Harker Heights, Tex., 503 U.S. 115, 128, 112 S.

Ct. 1061, 1070, 117 L. Ed. 2d 261 (1992)).  The loss of an inmate's legal

property was found not to be a substantive due process violation.

Morefield, 404 F. App'x at 445.  Furthermore, the loss of visitation

privileges was not a substantive due process violation either because it did

"not rise to the level of behavior that 'shocks the conscience.'"  Charriez v.

Sec'y, Fla. Dep't of Corr., 596 F. App'x 890, 896 (11th Cir. 2015).

Requiring a prisoner to pay for copies is not conscience shocking.

Accordingly, Defendant Dixon's motion to dismiss should be granted as to

Count III of the amended complaint.

**6.    Eleventh Amendment Immunity**

Defendant Dixon asserts his entitlement to Eleventh Amendment

immunity in that Plaintiff has sued the Defendant in his official capacity.

ECF No. 52 at 30-31.  Defendant asserts he "is immune from suit in his

official capacity as it relates to any request for damages, and all official

capacity claims for damages against him must be dismissed." *Id.* at 31.

Plaintiff's response clarifies that he is seeking compensation for the

improper charges, but states "he is <u>not</u> seeking it from Defendant Dixon . . .

." ECF No. 56 at 10.  Plaintiff states that he does not seek monetary

damages from Defendant Dixon but, instead, "for the FDOC to enforce the

terms of its contract" . . . that says Special Housing Unit prisoners . . . are .

. . exempt from being charged for black & white printouts of their Secure

Mail messages." *Id.* at 11.  In this context, there is no need to rule on the

Defendant's Eleventh Amendment immunity defense because Counts II

and III - which pertain to the charges for copies - should be dismissed.

Doing so leaves only Count I of the complaint - the First and Fourteenth

Amendment claims concerning the intercepting of mail.  ECF No. 46 at 6-9.

Plaintiff's request for relief as it relates to that claim is for declaratory and

injunctive relief only.  ECF No. 46 at 14.  That type of relief is not barred by

the Eleventh Amendment.  "Eleventh Amendment Immunity only protects

state officers from monetary damages claimed against them and does not

bar claims for 'prospective injunctive relief in order to end a continuing

violation of federal law.'"  Strawser v. Strange, 100 F. Supp. 3d 1276, 1282

(S.D. Ala. 2015) (citing to Tindol v. Alabama Dept. of Revenue, 2015 WL

350623, *10 (M.D.Ala. Jan. 23, 2015) (quoting Seminole Tribe of Fla. v.

Florida, 517 U.S. 44, 73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)).  The

Eleventh Amendment immunity defense should be rejected.

## 7.    Qualified Immunity

Defendant Dixon argues that Plaintiff has not shown that Defendant

violated a constitutional right that was clearly established.  ECF No. 52 at

32.  Defendant's argument ignores Plaintiff's First Amendment claim.

Nevertheless, qualified immunity protects a defendant sued in his individual

capacity.  Here, Defendant is sued in his official capacity.  Kentucky v.

Graham, 473 U.S. 159, 167, 105 S. Ct. 3099, 3106, 87 L. Ed. 2d 114

(1985) (stating "[t]he only immunities that can be claimed in an

official-capacity action are forms of sovereign immunity that the entity, qua

entity, may possess, such as the Eleventh Amendment").  Moreover,

qualified immunity is not available when a plaintiff seeks prospective

injunctive relief.  <u>Gilmore v. Hodges</u>, 738 F.3d 266, 273 (11th Cir. 2013).

Thus, Defendant's qualified immunity defense should also be rejected.

## **RECOMMENDATION**

In light of the foregoing, it is respectfully **RECOMMENDED** that the motion to dismiss, ECF No. 54, filed by Defendant JPay be **GRANTED** and the motion to dismiss, ECF No. 52, filed by Defendant Dixon be **GRANTED in part**.  Counts II and III of Plaintiff's amended complaint, ECF No. 46, should be **DISMISSED**, but the First Amendment claim presented in Count I should continue as to Defendant Dixon in his official capacity fordeclaratory and injunctive relief only.  It is also **RECOMMENDED** that this case be **REMANDED** for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on March 17, 2023.


 S/     Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**




## **NOTICE TO THE PARTIES**

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written**

objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.