# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**DANIEL JON PETERKA,**
**D.O.C. # 119773,**

     **Plaintiff,**

**VS.**                        **Case No. 4:21cv367-WS-MAF**

**RICKY D. DIXON, in his official**
**capacity as Secretary of the**
**Florida Department of Corrections,**

     **Defendant.**
_____/

## THIRD REPORT AND RECOMMENDATION[1]

This is a prisoner civil rights case brought by Plaintiff Daniel Jon Peterka who is proceeding pro se.  Counts II and III of Plaintiff's amended complaint, ECF No. 46, were dismissed in April 2023.  ECF No. 61. Thereafter, the case was stayed pending a decision by the Eleventh Circuit in *Sims v. Secretary, Florida Department of Corrections*, No. 19-13745.

---

[1] The first Report and Recommendation, ECF No. 58, entered on March 17, 2023, recommended Defendant JPay's motion to dismiss, ECF No. 54, be **GRANTED** and Defendant Dixon's motion to dismiss, ECF No. 52, be **GRANTED in part**.  The recommendation was adopted.  ECF Nos. 61, 81.  A Second Report and Recommendation, ECF No. 64, was entered to deny Plaintiff's motion to file a second amended complaint.  ECF No. 69.

ECF No. 70.  Subsequently, Defendant Dixon's motion to dismiss Count I was denied and the stay lifted.  ECF No. 81.  Plaintiff was granted leave to file another amended complaint, ECF Nos. 87 and 90, and his third amended complaint, ECF No. 88, is the operative pleading.  This action is limited to one remaining claim - that FDC is depriving Plaintiff "of the Procedural Due Process Rights secured to him by the First and Fourteenth Amendments."  ECF No. 88 at 9.

An Initial Scheduling Order was entered on September 27, 2023, ECF No. 86, and the parties were provided an opportunity to conduct discovery.  Plaintiff filed a motion for summary judgment in early January 2024.  ECF No. 97.  Defendant was permitted to file a consolidated response to Plaintiff's motion and Defendant's own summary judgment motion.  ECF No. 102.  Plaintiff was also permitted to file a consolidated response which also constitutes his reply, ECF Nos. 104-105, and he thereafter filed a "corrected" response and reply, ECF No. 111.

**Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Thus,

summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553.  The non-moving party must then show[2] the court "that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325, 106 S. Ct. at 2554.

---

[2] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

Case No. 4:21cv367-WS-MAF

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  A party must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Elec. Indus. Co., LTD. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Hickson Corp., 357 F.3d at 1260 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)).

"Summary judgment is not a time for fact-finding; that task is reserved for trial."  Sconiers v. Lockhart, 946 F.3d 1256, 1263 (11th Cir. 2020) (citing Tolan v. Cotton, 572 U.S. 650, 655-57, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014)).  Specific facts pled in a sworn complaint and supported by record evidence must be credited to the Plaintiff, and all reasonable inferences must be resolved in the light most favorable to the nonmoving party. Sconiers, 946 F.3d at 1262-63.  However, "when competing narratives emerge on key events, courts are not at liberty to pick which side they think

is more credible."  946 F.3d at 1263.  On the other hand, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co., 475 U.S. at 587 (internal quotation marks omitted) (quoted in Ricci v. DeStefano, 557 U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009)).  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249, 106 S. Ct. at 2511 (quoted in Sears v. Roberts, 922 F.3d 1199, 1205 (11th Cir. 2019)).

"Cross motions for summary judgment do not change the standard." Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church, 499 F.3d 32, 38 (1st Cir. 2007) (quoted in Ernie Haire Ford, Inc. v. Universal Underwriters Ins. Co., 541 F. Supp. 2d 1295, 1297 (M.D. Fla. 2008).  "'Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.'" Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n, 483 F.3d 1025, 1030 (10th Cir. 2007) (quoting Buell Cabinet Co. v. Sudduth, 608 F.2d 431, 433 (10th Cir. 1979)) (quoted in Ernie Haire Ford, 541 F. Supp.

2d at 1297-98)).  Thus, each motion for summary judgment has been

separately evaluated.

**Rule 56 Evidence**

Plaintiff is a state prisoner, confined in the Florida Department of

Corrections [DOC].  ECF No. 88 at 4.[3]  Defendant, as the Secretary of the

DOC is responsible for the promulgation and enforcement of all rules,

policies, and practices of the DOC and must ensure compliance with the

Constitution.  *Id.* at 4.[4]

The DOC provides prisoners with "access to electronic media

devices" through a "Multimedia Kiosk and Tablet Program."  ECF No. 88 at

5.  One feature of that program "is an electronic messaging system that

---

[3] Plaintiff's third amended complaint, ECF No. 88, was signed under penalty of perjury.  *Id.* at 13-14.  Thus, Plaintiff's sworn statements within the complaint constitute evidence which may be considered when ruling on summary judgment motions.  Sears v. Roberts, 922 F.3d 1199, 1206 (11th Cir. 2019); Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1098 (11th Cir. 2014) (cited in Sanchez v. Sanchez, No. 5:10cv288-RH/EMT, 2015 WL 5016842, at *1 (N.D. Fla. Aug. 24, 2015).

[4] Defendants' amended answer admitted only that Defendant is the Secretary of the DOC and that "Plaintiff has sued him in his official capacity for declaratory and injunctive relief."  ECF No. 94 at 3.  However, the Court notes that pursuant to Florida Statute 20.315, the Secretary is "[t]he head of the Department of Corrections" and is "responsible for planning, coordinating, and managing the corrections system of the state. The secretary shall ensure that the programs and services of the department are administered in accordance with state and federal laws, rules, and regulations, with established program standards, and consistent with legislative intent."  FLA. STAT. § 20.315 (West)

Case No. 4:21cv367-WS-MAF

allows prisoners and their correspondents to receive and respond to secure electronic messages . . . ." *Id.* at 5.  The electronic messaging system permits sending emails, as well as "eCards, photos, and videograms." *Id.* at 6.  DOC staff "screen all emails, both incoming and outgoing," just as they do with physical letters. *Id.*; *see also* ECF No. 97-3 at 36-37 (FLA. ADMIN. CODE R. 33-602.900(7)(b), (7)(h).  "[A]ny that are determined to violate state law, federal law, or Department rule are intercepted and not delivered."  ECF No. 88 at 6.  Plaintiff "takes no issue with" that practice. *Id.*

However, Plaintiff has provided documents to this Court to support his claim that the DOC does not provide "meaningful notice or any other process to either him or his correspondents when censoring their email correspondence."  ECF No. 97 at 1.  That is because even if notice of a rejection is provided, Plaintiff contends it is "not meaningful" because the unidentified censor for the DOC fails to provide a specific reason, stating only "something generic like 'due to content,' which could mean anything." ECF No. 88 at 7.

Attached to Plaintiff's summary judgment motion is a printout which shows Plaintiff had 6 censored or rejected emails.  ECF No. 97-3 at 42.

Specifically, three were censored and three emails sent to Plaintiff were "returned to sender." *Id.* Those occurred between May 2018 and August 2023. *Id.* The printout shows that all actions taken concerning the emails occurred either on the same date the email was created, or the following day with the exception of one email. *Id.* The first email listed was created on 5-11-2018, and action was taken to return it on 5-14-2018. *Id.* Otherwise, actions were taken by the following day, and all notifications were provided on the same day action was taken. *Id.*

Plaintiff has submitted a copy of the "auto-notification email" which is utilized by the Department. ECF No. 97-3 at 43. It advises: "The email you sent was censored." *Id.* There is a section entitled "reason" which presumably explains why the email was censored. *Id.* On the example provided, it states only: "JPay - Screenshot." *Id.* Under "comments," the notification informs the recipient that if they have questions, to contact Customer Support. *Id.*

On August 15, 2023, Plaintiff received a notice from an unidentified "JPay Representative" (via email) which advised that a letter which "had been sent to [Plaintiff] was returned back to sender." ECF No. 97-3 at 44.

The reason provided on the notice stated: "Other."  *Id.*  The "Comments"

portion of the email stated "screenshot," but no image was included.

An October 15, 2019, Plaintiff was informed that a "JPay Mail that

had been sent to [Plaintiff] was returned back to sender."  ECF No. 97-3 at

46.  Again, the reason stated "Other" and the "Comments" portion reported:

"Conducting business for his emails."  *Id.; see also* ECF No. 102-2 at 1.

A May 18, 2021, notice was sent to Plaintiff, advising that a "JPay

email that was sent" to Plaintiff had been "rejected due to content."  ECF

No. 97-3 at 47; ECF No. 88-1 at 4.  The notice advised Plaintiff that the

rejected email was from Eric Peterka, but provided no other information

explaining the problem with the content.  *Id.*

Plaintiff received a similar notice on September 15, 2022, advising

that a "JPay email that was sent" to Plaintiff had been "rejected due to

content."  ECF No. 97-3 at 48.  Plaintiff was informed that the rejected

email was from Gwen Peterka but, once again, no other information was

provided to explain why the content was problematic.  *Id.*  On January 8,

2023, another email sent to Plaintiff from Janet Evans was rejected "due to

content."  ECF No. 97-3 at 49.

Despite Plaintiff's submission of an "auto-notification email" which informed him that an "email [Plaintiff] sent was censored," *see* ECF No. 97-3 at 43, Defendant has shown that six emails sent to Plaintiff were censored, but no "outgoing emails from Plaintiff" were censored.  ECF No. 102 at 6; Defendant's Ex. H.  Exhibit H is a declaration from Carl Wesley Kirkland, Jr., the Department's Deputy Director of Institutional Operations.  ECF No. 102-8.  He declares that review of Plaintiff's censored email records reveals only "six (6) incoming emails censored due to content, and zero (0) outgoing emails censored."  *Id.*

Defendant's evidence shows that when a sender's email is censored, the sender receives a "notice that the email was rejected."  ECF No. 102 at 5; Ex. C at 1 (ECF No. 102-3); and Ex. D (ECF No. 102-4).  According to a declaration of Mr. Kirkland, when "an outside sender's communication is censored, both the inmate and the sender receive a notification that the communication has been rejected, and the notice provides the reason for censorship."  ECF No. 102-3 at 1.  Defendant provided a copy of the notice which is sent in those circumstances, *see* ECF No. 102-4, and review of the notice reveals it is the same as Plaintiff provided.  *See* ECF No. 97-3 at 43.

Case No. 4:21cv367-WS-MAF

As for the ability to challenge a rejection or censoring decision, Defendant points to Mr. Kirkland's declaration (Ex. C) which states that an inmate may "challenge the censorship decision via the Inmate Grievance Procedure, pursuant to Rule 33-103, Fla. Admin. Code." ECF No. 102-3 at 2. Upon receipt of a grievance, the censored email will be reviewed "to determine if it was properly rejected." *Id.* The inmate will be advised whether the "first censorship decision was" proper or improper. *Id.* If it was found to be an appropriate censorship for violating Departmental rules or "federal/state law," the "rejection will stay in effect and provide the reason for rejection." *Id.* If found to be improper, the email can be "uncensored." *Id.*

As additional evidence, Defendant points to Rule 33-602.900 of the Florida Administrative Code which "delineates when an email communication can be censored by a correctional institution, and for what reasons a censorship decision is made." ECF No. 102 at 4-5; *see* Ex. A (ECF No. 102-1). Of importance to this case are these provisions of Rule 33-602.900 (submitted as Ex. A). First, "[only content authorized by the

Department can be downloaded, accessed, used, or stored on a kiosk.[5]
Content that negatively impacts the safe, secure, and orderly operation of
an institution, or that compromises public safety will not be approved." FLA.
ADMIN. CODE R. 33-602.900(4)(g); *see also* FLA. ADMIN. CODE R. 33-
602.900(5)(p).  Second, use of kiosk or tablet "is subject to recording,
monitoring, and record retention." FLA. ADMIN. CODE R. 33-602.900(6)(a).
Third, an inmate must not use these services to "establish or conduct a
business," or to "enter contests or sweepstakes." FLA. ADMIN. CODE R. 33-
602.900(6)(c)-(d).  Fourth, "eCommunications are subject to screening to
ensure compliance with this rule," whether the communication is incoming
or outgoing.  FLA. ADMIN. CODE R. 33-602.900(7)(a)-(b).  Fifth, "[a]ny
eCommunication that violates state law, federal law, or Department rule will
be intercepted without explanation by authorized staff and will not be
delivered." FLA. ADMIN. CODE R. 33-602.900(7)(c).  Finally, the Rule

---

[5] A "kiosk" is a "stationary electronic device that is used to provide inmates with
access to kiosk services." FLA. ADMIN. CODE R. 33-602.900(2)(g). Services include:
"secure mail, communications center access, cards, video visitation, education/
programming activities, videograms, photos, and the ability to browse the media store
and access its content." FLA. ADMIN. CODE R. 33-602.900(2)(h).  Because Plaintiff is
"housed on death row," *see* ECF No. 46 at 11, his access to kiosk services is through
use of a "tablet." FLA. ADMIN. CODE R. 33-602.900(5)(d)3; *see* ECF No. 88 at 6.

articulates 23 reasons which permit rejection of an eCommunication.  FLA.

ADMIN. CODE R. 33-602.900(7)(l).

**Analysis**

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." Turner v. Safley, 482 U.S. 78, 84, 107 S. Ct. 2254, 2259, 96 L. Ed. 2d 64 (1987).  A prisoner "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822, 94 S. Ct. 2800, 2804, 41 L. Ed. 2d 495 (1974).  "Two of those are the right of access to the courts and the right to free speech." Mitchell v. Peoples, 10 F.4th 1226, 1229 (11th Cir. 2021); *see also* Adams v. James, 784 F.2d 1077, 1079 (11th Cir. 1986).

"[T]he freedom to think and speak is among our inalienable human rights." 303 Creative LLC v. Elenis, 600 U.S. 570, 584, 143 S. Ct. 2298, 2311, 216 L. Ed. 2d 1131 (2023).  Both prisoners and non-prisoners have "legitimate First Amendment" interests in communicating with each other. Thornburgh v. Abbott, 490 U.S. 401, 408, 109 S. Ct. 1874, 1879, 104 L. Ed. 2d 459 (1989); *see also* Perry v. Sec'y, Fla. Dep't of Corr., 664 F.3d 1359, 1367 (11th Cir. 2011) (affirming "that both prisoners and their

correspondents have a liberty interest in uncensored communication by letter"). Of importance to this case is the fact that "mail censorship implicates more than the right of prisoners." <u>Procunier v. Martinez</u>, 416 U.S. 396, 408, 94 S. Ct. 1800, 1809, 40 L. Ed. 2d 224 (1974), *overruled on other grounds by* <u>Thornburgh</u>, 490 U.S. 401, 109 S. Ct. 1874 (1989).[6]

> Communication by letter is not accomplished by the act of writing words on paper. Rather, it is effected only when the letter is read by the addressee. Both parties to the correspondence have an interest in securing that result, and censorship of the communication between them necessarily impinges on the interest of each. . . . Communication by letter is not accomplished by the act of writing words on paper. Rather, it is effected only when the letter is read by the addressee. Both parties to the correspondence have an interest in securing that result, and censorship of the communication between them necessarily impinges on the interest of each.

<u>Procunier</u>, 416 U.S. at 408, 94 S. Ct. at 1809. "The wife of a prison inmate who is not permitted to read all that her husband wanted to say to her has suffered an abridgment of her interest in communicating with him as plain

---

[6] "Although <u>Procunier</u> was overruled by <u>Thornburgh</u> as to the standard to be employed in evaluating a First Amendment prisoner case, it did not address the procedural safeguards that should accompany such a decision." <u>Mathews v. Jones</u>, No. 4:16cv375-RH/CAS, 2019 WL 3976572, at *7 (N.D. Fla. July 3, 2019), report and recommendation adopted, No. 4:16cv375-RH-CAS, 2019 WL 3976313 (N.D. Fla. Aug. 22, 2019) (citing to <u>Perry</u>, 664 F.3d at 1368 (stating that "<u>Thornburgh</u> did not discuss the standard for procedural due process, except to thoroughly lay out the safeguards created by the particular regulations in question and declare that the regulations properly 'provide[d] procedural safeguards for both the recipient and the sender.' ")).

as that which results from censorship of her letter to him."  416 U.S. at 409, 94 S. Ct. at 1809.

In today's world, communication often occurs through email as opposed to letters.  "An email, as the term itself implies, is a message, note, or letter sent by electronic means over a computer system."  Benning v. Comm'r, Georgia Dep't of Corr., 71 F.4th 1324, 1326 (11th Cir. 2023), *cert. denied sub nom.* Benning v. Oliver, 144 S. Ct. 1457, 218 L. Ed. 2d 689 (2024).  Emails "constitute speech" which is protected under the First Amendment.  Benning, 71 F.4th at 1330-31 (noting that today, "emails serve as the electronic equivalent of physical letters").  Further, "[a]ll manner of speech—from 'pictures, films, paintings, drawings, and engravings,' to 'oral utterance and the printed word'—qualify for the First Amendment's protections; no less can hold true when it comes to speech [that is] conveyed over the Internet."  303 Creative LLC, 600 U.S. at 587, 143 S. Ct. at 2312.  Thus, an "inmate's interest in 'uncensored communication'" is a "liberty interest protected by the due process clause, regardless of whether that communication occurs in the form of a letter, package, newspaper, magazine, etc."  71 F.4th at 1330 (quoting Bonner v. Outlaw, 552 F.3d 673, 677 (8th Cir. 2009)).

This case does not challenge those broad principles.  Although

Defendant has undertaken a thorough examination of case law supporting

the Department's ability to censor email under the First Amendment, *see*

ECF No. 102 at 9-15, Plaintiff is not alleging a substantive First

Amendment claim.  *See* ECF No. 111 at 2.  Plaintiff makes clear that he is

not challenging the authority to screen his emails or censor "those that

threaten institutional security."  *Id.*

Rather, Plaintiff's claim is based on the well established rule that "the

decision to censor or withhold delivery of a particular letter must be

accompanied by minimum procedural safeguards."  <u>Procunier</u>, 416 U.S. at

417, 94 S. Ct. at 1814; <u>Perry</u>, 664 F.3d at 1367; *see* ECF No. 111 at 3.

Because "emails are the functional equivalent of letters written or typed on

paper," the Eleventh Circuit established in <u>Benning</u> that prison officials

must provide "notice and other procedural safeguards when they intercept

or otherwise censor emails sent by inmates."  71 F.4th at 1331.  The

Supreme Court established three procedural safeguards to satisfy the Due

Process Clause: (1) the inmate must "be notified of the rejection of" mail

written by or addressed to him, (2) the author of the mail "be given a

reasonable opportunity to protest" the rejection decision, and (3)

complaints or an appeal of the rejection decision must "be referred to a prison official other than the person who originally disapproved the correspondence." <u>Procunier</u>, 416 U.S. at 418–19, 94 S. Ct. at 1814; *see also* <u>Benning</u>, 71 F.4th at 1330 (concluding that "a reasonable jury could find that" the prisoner "was not provided any notice of the interceptions" of email to his sister "or of his right to challenge the decisions").

As a starting point, the Eleventh Circuit has found that "for due process purposes it makes both doctrinal and practical sense to treat outgoing email the same as physical letters." <u>Benning</u>, 71 F.4th at 1331. Plaintiff has not submitted evidence to show that the DOC treats these two forms of communication differently.  He *argues*, however, that the DOC "treats emails differently than physical letters," because there "does not seem to be any rules-based requirement that either the sender or the intended recipient be notified when an email has been disapproved for delivery."  ECF No. 88 at 6-7.

Defendant does not specifically address this argument, other than to assert that notice does accompany rejected emails and Plaintiff was provided notice.  ECF No. 102 at 18.  The evidence in this case as outlined above shows that notice is given to both inmates and their correspondents.

Case No. 4:21cv367-WS-MAF

Plaintiff claims, however, that when notice is given to him of a

rejection, it is "at the censor's discretion" and is "not meaningful."  *Id.*  In

part, Plaintiff relies upon the plain language of the Rule which permits

interception "without explanation."

The Court in <u>Benning</u> was bothered by the Georgia SPO 204.10

which similarly stated that "communications which violate [the] policy will be

intercepted without explanation."  <u>Benning</u>, 71 F.4th at 1333.  A prison

official "confirmed in his declaration that SOP 204.10 provide[d] for no

explanation when emails are intercepted for a violation."  71 F.4th at 1333.

Moreover, prison officials "did not claim that they notified Mr. Benning of

their decisions or provided him with an administrative remedy."  *Id.*  That is

an important distinction with this case.  Here, Plaintiff and the sender are

both provided notice.  Although the specific reason is not provided to

Plaintiff beyond a vague statement of "due to content," Plaintiff does have

notice and the opportunity to appeal that decision through the grievance

process.  Plaintiff was able to do so, as his grievances demonstrate.  *See*

ECF Nos. 102-5 and 102-6.  The reality for a prisoner is that he may not be

provided a picture of the objectionable content because to do so would be

to provide him that which is against the Rules.  However, the "auto-

notification email" utilized by the Department, *see* ECF No. 97-3 at 43,

provides a screenshot image which will notify the sender as to the "reason"

the email was censored.

Plaintiff argues that he has "no meaningful way to challenge the

rejection of an email that is unexplained." ECF No. 97 at 4. It is true that

the responses provided to Plaintiff gave him very little information upon

which to base an objection or appeal; stating "other" or "rejected due to

content" leaves much to be desired. Yet the Court cannot conclude that

this practice violates the procedural process which is due him. Under both

Procunier and Benning, Plaintiff is entitled to "receive notice of the rejection

of a letter written by or addressed to him" and to "be given 'reasonable

opportunity to protest that decision." Benning, 71 F.4th at 1329 (quoting

Procunier, 416 U.S. at 418-419, 94 S.Ct. 1800). There is no requirement

that notice be elaborate, explanatory, or elucidative.

Unlike Benning, where the prisoner had numerous emails intercepted

and withheld and prison officials did not notify him of many of those events,

Plaintiff was given notice. Furthermore, prison officials in Benning did not

give the prisoner "an opportunity to appeal their decisions to a different

GDC official." Benning, 71 F.4th at 1327. Plaintiff was able to grieve the

decisions of those persons who rejected or censored his emails.  He does not argue to the contrary; rather, he claims it is not a "meaningful" challenge.  The Court declines to engraft additional language to the due process standard provided by the Supreme Court.  The Court requires a "reasonable opportunity to protest" a censorship decision.  <u>Procunier</u>, 416 U.S. at 418-419, 94 S.Ct. 1800.  Providing more information to Plaintiff might enable him to present a better argument to prison officials, but it does not change the fact that Plaintiff is provided a "reasonable opportunity" to challenge decisions which reject or censor emails sent to him.  Plaintiff has not been deprived of due process and Defendant's motion for summary judgment should be granted.

Furthermore, although the Rules pertaining to eCommunications may not include a specific mechanism for challenging censorship decisions, the Department does provide a 3-step grievance procedure which allows an inmate to raise such challenges.  *See* FLA. ADMIN. CODE R. 33-103.  Plaintiff availed himself of that process prior to filing this litigation.  Thus, any attempt to assert a due process claim based on the omission of a specific provision within Rule 33-602.900 should be rejected.

## RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that the Defendant's motion for summary judgment, ECF No. 102, be **GRANTED**, that Plaintiff's motion for summary judgment, ECF No. 97, be **DENIED,** and judgment entered in Defendant's favor.

**IN CHAMBERS** at Tallahassee, Florida, on August 20, 2024.


S/    Martin A. Fitzpatrick                            
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636.**